IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

YVETTE ADELLE SANDERS,                )
Individually and as surviving parent, )
and YVETTE ADELLE SANDERS,            )
as Administratrix of The Estate of    )
ANDREW THOMAS SPENCER,                )
deceased,                             )
                                      )        CIVIL ACTION FILE
     Plaintiffs,                     )        NO.: 1:17-cv-02341-WSD
                                      )
     v.                              )
                                      )
QUIKTRIP CORPORATION                  )
                                      )
     Defendant.                      )

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COME NOW Plaintiffs and file this response in opposition to Defendant's

Motion for Summary Judgment, in this wrongful death case arising out of the death

of Andrew Spencer, an innocent victim and invitee, on Defendant QuikTrip's

premises.  This incident was foreseeable to Defendant QuikTrip in light of past

criminal activity on the premises, including at least five shooting incidents, as well

as its location in a high-crime area near a number of clubs.  Accordingly, QuikTrip

owed a duty to protect invitees like Spencer from foreseeable third-party crime, but

breached that duty on Thursday December 29, 2016, resulting in this tragic

incident.  For these and the reasons stated herein, there are several issues of fact for a jury and Defendant QuikTrip's Motion for Summary Judgment should be denied.

## STATEMENT OF FACTS

On Thursday December 29, 2016, Andrew Spencer died while a customer at the QuikTrip located at 4050 Buford Highway, Atlanta, GA at approximately 3:30 a.m.  The subject QuikTrip was in the area of multiple clubs and it was "an every-night thing" for sometimes-intoxicated customers to come to QuikTrip after leaving the clubs, known to be gang hangouts, between 3:00 a.m. and 4:00 a.m. (Exh. A, Reyes Dep. 47:9-24; Exh. B, Romero Dep. 33:16-17; Exh. C, Cushenan Dep. 27:5-13).  This created a security vulnerability at the subject QuikTrip.  (Def. Exh. E, Vilines Expert Report p. 8-9) (identifying many significant incidents on the property and in the surrounding area before 12/29/16); (*see also* Exh. D, Harrison Expert Report p. 9) (stating there is a spike in crime "between 3am and 5am, as bars and clubs empty out and alcohol takes effect").

### A. Defendant's expert testimony shows that crime was likely at QuikTrip on Thursday December 29, 2016 between 3:00 and 4:00 a.m.

Defendant QuikTrip's expert, Glenn Harrison, supports a finding that crime was a foreseeable possibility at QuikTrip between 3:00 and 4:00 a.m. on Thursday December 29, 2016, the time of the subject incident. (*See* Exh. D, Harrison Report p. 9). Specifically, Mr. Harrison looked at crimes occurring in the five years before

2

the subject incident and within 0.5 miles of the subject premises.  Based on this data, Mr. Harrison opined that there is a spike in crime in the area of the subject QuikTrip "between 3am and 5am, as bars and clubs empty out and alcohol takes effect." (Exh. E, Harrison Dep. 34:10-13). He further stated that "[t]he spike between 3am and 5am becomes more pronounced if one focuses on violent or gun-related crimes." (*Id.* at 34:14-18). When he limited the scope of his analysis to violent or gun-related crimes committed outside, "the spikes are more pronounced between 1am and 4am," and "these data would appear to provide support for the claim that there is a relatively 'hot period' of crime in this area between 1am and 4am." (*Id.* at 34:19-35:3).  Mr. Harrison's analysis further revealed that <u>Thursday had the second highest rate of crime</u> or at least was "a big day" for crime, and that Thursday had the third highest rate of violent or gun related crimes.  (*Id.* at 49:6-14, 49:20-50:2; Exh. F, Harrison Graphs).[1]

Defendant's expert analysis is further supported by Plaintiffs' expert John C. Villines who opines that in the immediate area of the subject QuikTrip, between January 1, 2015 and December 29, 2016, the highest rate of violent outdoor activity occurred between 3:00 and 4:00 a.m.  (Def. Exh. E, Villines Report p. 10).

---

[1] To the extent Defendant tries to distinguish between incidents on weekdays versus weekends, Plaintiffs note that Mr. Harrison failed to specifically look at gun-related outdoor crimes occurring on Thursdays, despite Thursday being "a big day" for crime.  (Exh. E, Harrison Dep. 68:10-17).  Nor did Mr. Harrison assess crime rates by month of the year.  (*Id.* at 37:2-4).

Looking at days of the week, Thursday had the second highest rate of incidents, and looking at months of the year, December had the third highest rate of incidents. (*Id.*). Despite the high chance of crime on Thursday December 29, 2016, Defendant QuikTrip only employed security guards on Friday night/Saturday mornings from 10:00 p.m. to 5:00 a.m. and Saturday night/Sunday mornings from 10:30 p.m. to 5:30 a.m. (beginning April 13, 2014). (Exh. G, Thornton 30(b)(6) Dep. 11:9-13:5).

### B. Crime was foreseeable to Defendant QuikTrip based upon prior crime

The evidence shows that the following incidents occurred at the subject QuikTrip and that many involved guns or fights in the parking lot, therefore making the subject incident foreseeable to QuikTrip:

1. December 19, 2016 (Monday)—sale of drugs in QuikTrip parking lot (Exh. H, 12/19/16 Police Report)

2. November 27, 2016 (Sunday at 4:23 p.m., when no security guard present)—verbal altercation in parking lot (Exh. I, QuikTrip Customer Activity Report)

3. October 24, 2016 (Monday)—altercation in the parking lot (Exh. I)

4. October 1, 2016 (Saturday at 9:21 p.m., no security guard would have been present)—woman held at gunpoint on QuikTrip's premises before being murdered (Exh. J, 10/01/16 QuikTrip Incident Report)

5.  <u>March 20, 2016</u>—fight/altercation in the parking lot (Exh. I)

6.  <u>March 12, 2016</u>—shot fired in the QuikTrip parking lot (Exh. K, 03/12/16 Certified Police Report)

7.  <u>December 13, 2015</u>—disorderly conduct in parking lot (Exh. L, 12/13/15 Certified Police Report)

8.  <u>November 21, 2015</u> (Saturday at 6:08 p.m., no security guard would have been present)—male assaulted at QuikTrip (Exh. M, 11/21/15 Certified Police Report, 11/21/15 QuikTrip Incident Report)

9.  <u>June 11, 2015</u> (Thursday)—altercation in the QuikTrip parking lot (Exh. I)

10. <u>March 5, 2015</u> (Thursday)—assault and altercation in the QuikTrip parking lot (Exh. N, 03/05/15 Certified Police Report)

11. <u>January 7, 2015</u> (Wednesday)—break-in to motor vehicle at QuikTrip (Exh. O, 01/07/15 Certified Police Report)

12. <u>December 3, 2014</u> (Wednesday)—battery at the QuikTrip (Exh. P, 12/03/14 Certified Police Report)

13. <u>November 9, 2014</u>—assault rifles fired in the QuikTrip parking lot (Exh. Q, 11/09/14 Certified Police Report, 11/09/14 QuikTrip Incident Report)

14. <u>October 9, 2014</u> (Thursday)—male with firearms at the QuikTrip (Exh. R, 10/09/14 Certified Police Report, 10/09/14 QuikTrip Incident Report)

15. April 24, 2014 (Thursday) —criminal trespass where person out of control and yelling at customers at QuikTrip (Exh. S, 04/24/14 Certified Police Report)

16. April 6, 2014 (Saturday-no security guard present)—shootout in the QuikTrip parking lot where woman was struck by bullet (Exh. T, 04/06/14 Certified Police Report, 04/06/14 QuikTrip Incident Report)

17. May 1, 2013 (Wednesday)—loitering for sex in the QuikTrip parking lot (Exh. U, 05/01/13 Certified Police Report)

18. August 4, 2012 (Saturday-no security guard present)—shots fired in the QuikTrip parking lot (Exh. V, 08/04/12 Certified Police Report)

Of the incidents identified above, Defendant QuikTrip knew of at least four shootings/gun-related incidents in the parking lot in addition to numerous fights. (*See* Exhs. I, J, K, Q, T).  Further, nine of the incidents occurred on weekdays and fourteen occurred when no security guard was present on the premises.  (*See* Exhs. H-V).  Accordingly, it was foreseeable to Defendant QuikTrip that crime may occur when no security guard was present and on a weekday.

### C. <u>The Death of Andrew Spencer on Defendant QuikTrip's Premises</u>

On the night of the incident, Spencer arrived at QuikTrip with friend Quintin Heard at approximately 3:20 a.m.  (Exh. W, Heard Dep. 42:11-21, 44:1-3). There is no dispute that Spencer was Defendant's invitee.  (*Id.* at 53:10-15).  Spencer

walked into the store and to the hotdog stand where the shooter, Leroy Copney, was standing.  (*Id.* at 47:15-19). Spencer did not say anything to or touch the shooter. (*Id.*).  Surveillance video shows that the shooter said something to Spencer before exiting the QuikTrip, proceeding to his motor vehicle, placing a gun in his waistband, and openly pacing in the parking lot near the front entrance of the store until Spencer exited.  (Def. Exhibit B, Surv. Video Gas Left/Front Entry View, 03:21:30-3:24:30; Exh. X, QT Incident Report 12/29/16).

As decedent Spencer and his friend Heard exited the store, the shooter-standing immediately outside of the entrance-stated "what's popping," "you guys were looking at me funny in the store.  You know, y'all got any problems?," and "y'all out here fake reppin'."  (Exh. W, Heard Dep. 55:1-11).  Heard understood these to be gang-related statements regarding gang affiliation.  (*Id.* at 59:7-13).  It is undisputed that neither decedent Spencer nor Heard were in a gang and never represented the same.  (Exh. C, Cushenan Dep. 25:22-26:5, 26:21-27:1).  Next, the shooter and others began to circle Spencer and Heard, and Heard described the shooter's posture as a "fighting posture".  (Exh. W, Heard Dep. at 56:9-57:7, 61:17-25).  Heard indicated he was in a defensive stance because he assumed that the shooter was going to attack him, but that he relaxed when he saw a random Chamblee police officer pull into the parking lot as he assumed "that someone had

called the police or they were just doing a regular routine in that area because of knowing what Follies is."[2]  (*Id.* at 57:8-25, 60:1-3).

However, that was not the case.  Chamblee officer Gaetano Antinozzi testified that at the time of the incident he went to the QuikTrip to get gas.  (Exh. Y, Antinozzi Dep. 15:15-20).  As he was pulling into the parking lot, he immediately saw what appeared to be a "negative encounter, and I would say confrontation" between the shooter and Spencer.  (*Id.* at 46:4-47:1).  Before the shooter saw Officer Antinozzi, the shooting occurred and Spencer later died at the QuikTrip.  (*Id.* at 50:9-13; Exh. W, Heard Dep. 57:17-21, 63:1-7).

### D. <u>Defendant QuikTrip failed to follow internal policies and procedures</u>

Defendant QuikTrip had in place several policies and procedures on December 29, 2016.  Of note, QuikTrip employees were supposed to follow a panic alarm system where employees were instructed to push an alarm upon seeing a fight, someone loitering, any personal threat to a QuikTrip customer, or larceny amongst other things. (Exh. Z, Security alarm policy; Exh. AA, Tennison Dep. 111:3-13).  Specifically, employees were supposed to watch the parking lot and engage the panic alarm system if they saw a fight or threat to a customer.  (Exh. B, Romero 46:9-19).  This system relied heavily on the discretion of QuikTrip's store

---

[2] Follies is a nightclub where gang members hang out located at 4075 Buford Highway, Chamblee, GA, almost directly across the street from the subject QuikTrip.  (Exh. C, 27:14-18).

employees and did not act as a crime deterrent.  (Exh. AA, Tennison Dep. 34:8-22, 36:3-10).  On the night of the incident, no QuikTrip employee pressed their panic button until after the shooting of Spencer as no employee was watching the parking lot in violation of QuikTrip's policies and procedures.  (*See* Exh. I; Exh. A, Reyes Dep. 80:18-20).  Accordingly, there is a question of fact as to whether Defendant's employees, had they been watching the parking lot like they were supposed to, should have engaged the panic alarm system before the incident as witness testimony indicates that the shooter was in a "fighting posture" and the interaction between the shooter and Spencer was a "negative encounter" and confrontation. (Exh. W, Heard Dep. 61:23-62:2; Exh. Y, Antinoizzi Dep. 46:4-47:1).

Defendant QuikTrip also had in place a policy relating to security guards. This policy indicated that "[i]t may become necessary to place a security in a store to provide safety for employees and customers or as a deterrent in areas where crime or the change of crime is prevalent."  (Exh. BB, Security Guards Policy). Defendant QuikTrip relied almost exclusively on store-level employees to recommend the addition of security guards at its stores. (Exh. CC, Milburn Dep. 13:2-8).  However, on-site employees testified they had no training on security or crime deterrents, and QuikTrip's District Manager testified there is no training for employees on how to exercise their discretion in requesting security changes "other

than the security guard policy… that suggests that if they have a situation where they would feel like there is a need for a security guard, to direct that information towards the store manager for the initiation of that conversation." (*Id.* at 27:18-25; Exh. A, Reyes Dep. 41:9-12, 72:20-22).  Further, the on-duty manager at the time of the subject incident testified that it was his opinion that having a security guard increased crime and that he had no training on how to spot the need for increased or decreased security. (Exh. A, Reyes Dep. 72:8-73:1).

Even though Defendant QuikTrip's policy and procedure acknowledged that a security guard may be needed in "areas where crime or the chance of crime is prevalent," QuikTrip did no security vulnerability survey or other assessment of crime in the area surrounding the subject QuikTrip.  (Exh. BB, QuikTrip Security Guards Policy; Exh. AA, Tennison Dep. 22:18-23).  Failure to conduct such an assessment is a violation of industry standards and guidelines for assessing and mitigating risk of crime.  (*See* Def. Exh. E, Villines Report p.14).  Moreover, Defendant QuikTrip's head of security testified that he has on multiple occasions throughout his seven-year tenure recommended that QuikTrip undertake a crime analysis for each existing store because he thinks "it would be a criteria that one would use to determine whether or not you would want to employ security or not….".  (Exh. AA, Tennison Dep. 98:16-18, 99:7-25, 101:21-25).  However,

QuikTrip did not undertake a crime analysis because "it's about optimizing the investment" and "it's a function of worth and value in time and effort." (*Id.* at 99:20-25, 102:9-15). Whether it was reasonable to ignore the advice of QuikTrip's head of security, QuikTrip's security guard policy, as well as industry standards in failing to analyze crime is a question of fact for a jury.

### E. Defendant QuikTrip did nothing to monitor the parking lot on 12/29/16

Although QuikTrip is a gas station and logically a significant amount of activity occurs in the parking lot area, QuikTrip's on-duty manager Reyes testified that his "duties were just inside the store" and that he was not responsible for conducting any sort of patrol of the parking lot. (Exh. A, Reyes Dep. 75:18-21, 76:5-7). In fact, Reyes testified that QuikTrip did absolutely nothing to physically monitor or watch the parking lot on the night of the incident. (*Id.* at 80:18-20). Further, despite having outdoor cameras, the cameras were not monitored on site and Reyes did not have the ability to view the cameras covering the parking lot areas. (*Id.* 77:5-8, 103:17-19; Exh. AA, Tennison Dep. 37:1-3). Rather, the crux of QuikTrip's security system on December 29, 2016, involved a group of people in Tulsa, Oklahoma, who would view video footage of the store if an employee pushed a panic alarm. (Exh. B, Romero Dep. 18:12-23, 132:9-15). This created a dangerous situation for customers, including Spencer, in the QuikTrip parking lot

between 3:00 and 4:00 a.m. when intoxicated persons leaving clubs were known to frequent the premises.  (Exh. A, Reyes Dep. 47:9-24; Exh. D, p.8).

Store manager Romero testified materially in conflict to on-duty manager Reyes, stating that Reyes and other employees were supposed to be monitoring/watching the parking lot.  (Exh. B, Romero Dep. 44:7-21, 46:13-19). Manager Romero further indicated that Reyes was supposed to be watching the incident unfold and that if he did not, Reyes made a mistake on December 29, 2016.  (*Id.*).  It is clear Reyes made a mistake on the night of the incident as he did nothing to monitor the parking lot and further testified that he did not even know the shooter and Spencer were on the premises before the shooting.  (Exh. A, Reyes Dep. 80:18-20, 99:12-15, 99:25-100:3).

### F. **Defendant QuikTrip Had No Security Guards on December 29, 2016**

Defendant QuikTrip recognized the need for security guards, but only had security on Friday and Saturday nights.  Their role on the premises was to deter crime and step in if criminal activity occurred. (Exh. DD, Chang Dep. 11:7-16, 12:15-20).  The security guards testified that, on occasions before December 29, 2016, they had successfully intervened into verbal altercations in the parking lot and that their intervention de-escalated the altercation such that no violent incident occurred.  (*Id.* at 13:15-14:5; Exh. EE, Bothwell Dep. 24:19-25:17).  Further, as it

12

relates to the incident at issue, Officer Antinozzi testified that if a security guard had been present at the time of the subject incident on December 29, 2016, the guard would have been obligated to intervene, and "if any alert police officer had seen what I seen – what I saw, they would have recognized it as a potential – as a negative confrontation that they should have at least investigated."   (Exh. Y, Antinozzi Dep. 48:3-12). Accordingly, the officers' testimony demonstrates there is a question of fact as to causation and whether this incident could have been prevented by the presence of a security guard.

For these reasons, and the reasons stated below, there a several questions of fact for a jury, and this Court should deny Defendant's Motion in its entirety.

## ARGUMENT AND CITATION TO AUTHORITY

### I.   Plaintiffs are entitled to the benefit of every reasonable doubt

Summary judgment may only be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying [materials] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only when that burden has been met does the burden shift to the

non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). The Eleventh Circuit explained:

> In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. All reasonable doubts about the facts should be resolved in favor of the non-movant. If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.

*Burton v. City of Belle Glade*, 178 F.3d 1175 (11th Cir. 1999). Defendant has not met its burden and there exist several issues of fact; therefore, summary judgment respectfully must be denied.

## II.    The shooting of Andrew Spencer was foreseeable

Under Georgia law, an owner or occupier of real property owes a duty to its invitees to exercise ordinary care in keeping its premises safe, including from reasonably foreseeable third-party criminal acts. *See* O.C.G.A. § 51–3–1; *Bishop v. Mangal Bhai Enterprises, Inc.*, 194 Ga.App. 874 (1990). Specifically, "If the proprietor has reason to anticipate a criminal act, he or she then has a 'duty to exercise ordinary care to guard against injury from dangerous characters.'" *Wade v. Findlay Management, Inc.*, 253 Ga.App. 688, 689 (2002). "[T]he incident

causing the injury must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers or tenants against the risk posed by that type of activity." *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 786 (1997). However, courts in Georgia reject any requirement of a "rigid, formalistic analysis of the factual similarity between various instances of criminal activity." *Woodall v. Rivermont Apts. P'ship*, 239 Ga. App. 36, 520 S.E.2d 741 (1999). Further, "the question 'of reasonable foreseeability' of a criminal attack is generally 'for a jury's determination rather than summary adjudication by the courts.'" *Sturbridge Partners, Ltd.*, 267 Ga. at 786.

In *Matt v. Days Inns*, 212 Ga. App. 792 (1994), the plaintiff was shot in a robbery attempt in a motel parking lot. *Id.* at 795-96. The plaintiff sued the motel, contending it failed to provide adequate security or take reasonable steps to protect him from the foreseeable third-party attack. *Id*. at 792. The evidence showed that the robbery happened fast, the motel had an unarmed security guard in the parking lot, the security guard saw the crime as it took place, and the security guard immediately contacted the motel to notify police. *Id*. at 793. Despite these facts, the Court of Appeals found that a jury question existed as to the motel's negligence. *Id*. at 796. In reaching this conclusion, the court recognized two

important principles: (1) issues of negligence are for the jury, except in plain and palpable cases in which reasonable minds cannot differ; and (2) simply providing security does not insulate a defendant from liability when the security measures prove to be inadequate. *Id*. at 795-96. The court reasoned that a jury could find negligence because the security guard remained in his vehicle, the motel did not install a security gate, and the motel did not maintain an armed security force. *Id*.

Here, like in *Matt*, there are questions of fact for a jury. Plaintiffs present evidence of at least eighteen (18) criminal incidents occurring between August 4, 2012, and December 29, 2016, at the subject QuikTrip. (*See* Exhs. H-V). Of these incidents, Defendant QuikTrip was aware of at least four (4) shooting/gun-related incidents as well as several fights in the parking lot. (*See* Exhs. I, J, K, Q, T). Further, although QuikTrip attempts to draw a distinction between crime on weekends versus weekdays, at least nine (9) of the noted incidents occurred on weekdays and fourteen (14) occurred when no security was present on the premises. (Exhs. H-V). Moreover, and as is very telling, Defendant QuikTrip ignores the testimony of its own expert who testified and opined that Thursday was a "big day" for crime, Thursday had the third highest rate of violent or gun-related crime, and there was a "hot period" of crime between 1:00 a.m. and 4:00 a.m. in the area of the subject QuikTrip. (Exh. E, Harrison Dep. 49:6-14; Exh. D, p. 9).

16

Accordingly, there is a question of fact as to whether the death of Spencer was foreseeable, and this Court should respectfully deny summary judgment.

Further, there is also a question of fact as to whether the incident was foreseeable to QuikTrip employees present on December 29, 2016. As manager Romero testified, on-duty manager Reyes should have been watching the incident unfold and, because he did not, the on-duty manager made a mistake. (Exh. B, Romero Dep. 44:7-21). In fact, the on-duty manager took no responsibility for watching the parking lot areas in violation of QuikTrip's own policies and procedures. (*Id.* at 46:13-24; Exh. A, Reyes Dep. 75:18-21, 76:5-7). Had he been watching, given witness testimony that the shooter was in a "fighting posture" and the interaction between the shooter and Spencer was a "negative encounter", there is a question of fact as to whether the on-duty manager should have activated the panic alarm system or notified the police. (Exh. W, Heard Dep. 61:23-62:2; Exh. Y, Antinoizzi Dep. 46:4-47:1). Upon activation of the panic alarm, police could have been to the premises within seconds. (Exh. B, Romero Dep. 46:13-19).

### III.   Defendant QuikTrip breached its duty to protect invitees from foreseeable third-party crime

Because crime was foreseeable on Defendant QuikTrip's premises, Defendant had a "duty to exercise ordinary care to guard against injury from dangerous characters." *Sturbridge Partners, Ltd.*, 267 Ga. at 786.   Whether

Defendant QuikTrip breached that duty of care is a jury question.  By way of example, there is a jury question as to each of the following: (1) whether QuikTrip should have employed a security guard at the time of the incident, (2) whether QuikTrip was negligent in failing to monitor or patrol the parking lot on December 29, 2016, (3) whether QuikTrip should have conducted a crime analysis for the subject property as recommended by its head of security, (4) whether QuikTrip's employees should have recognized the ongoing incident and engaged the panic alarm system, and (5) whether having employees in Tulsa, Oklahoma watching video monitors of hundreds of stores nationwide is reasonable given the high-crime area, gang activity, and actual crime on the subject property.  Accordingly, Defendant QuikTrip's Motion for Summary Judgment respectfully must be denied.

## IV.    There is a question of fact as to causation

Proximate cause is generally a jury question.  *See e.g. Ontario Sewing Machine Co., Ltd. v. Smith*, 275 Ga. 683 (2002) ("[I]t is axiomatic that questions regarding proximate cause are 'undeniably a jury question' and may only be determined by courts 'in plain and undisputed cases.'").  As discussed above, because the murder of Spencer was reasonably foreseeable to Defendant QuikTrip, there is a genuine issue of material fact as to causation. *See James v. Flash Foods, Inc.*, 267 Ga.App. 210 (2004) (finding a question of fact as to causation where gas

station had at least one previous armed robbery, that the gas station failed to follow its own cash control policy on the night of the incident, and that the gas station failed to comply with its visibility requirement thus making the commission of the crime more likely and aiding the perpetrator in avoiding detection).

Here, there is clearly a question of fact as to causation.  Officer Antinozzi testified that as he was pulling into the QuikTrip, he immediately noted a "negative encounter" or "confrontation" that an alert security guard should have at least investigated.   (Exh. Y, Antinozzi Dep. p. 46, 48).  Moreover, the evidence shows that the security guards have intervened in similar fights and altercations in the past and that their intervention de-escalated the situation such that no violent incident occurred.  (Exh. DD, Chang Dep. 12:15-20, 13:15-14:5; Exh. EE, Bothwell Dep. 24:19-25:17).  The security guards further noted their role as a criminal deterrent. (Exh. DD, Chang Dep. 11:7-16).  Accordingly, there is a question of fact as to whether the failure to have a security guard present proximately caused the incident as the presence of a security guard could have deterred the incident or otherwise intervened and de-escalated the incident.  (*See also* Def. Exh. E, Villines' Report p. 14) (stating that the presence of a capable guardian more likely than not could have deterred or prevented the murder of Spencer).

There is also a question of fact as to whether Defendant QuikTrip's onsite

19

employees, if they had been watching the parking lot on the night of the incident as they were supposed to, should have recognized the verbal altercation that escalated and pressed their panic button or otherwise alerted the police by calling 911.  Had the police been notified, especially given the close location of Officer Antinozzi before the shooting, there is a question of fact as to whether the incident could have been prevented.  (*See also* Exh. B, Romero Dep. 46:13-19) (stating police can be on premises seconds after an employee hits panic a button).

## V.     There is a jury question as to Plaintiffs' negligent hiring, retention, training, and supervision claims

There is a clear question of fact as to Plaintiffs' claims of negligent hiring, retention, training, and supervision. Namely, Defendant QuikTrip relies upon on-site employees to request security measures, including security guards.  (Exh. CC, Milburn Dep. 13:5-11). However, on-site employees testified they have no training on security or crime deterrents or how to spot the need for increased or decreased security.  (*See* Exh. A, Reyes Dep. 41:9-12, 43:9-12, 72:8-73:1).   Moreover, QuikTrip's District Manager testified there is no training for employees on how to exercise their discretion in requesting security changes.  (Exh. CC, Milburn Dep. 27:18-25). There accordingly exists a question of fact on negligent training, retention, and supervision of on-site employees.  Because Plaintiffs, as discussed below, have a valid claim for punitive damages, Plaintiffs' claims for negligent

hiring, retention, training, and supervision survive despite any admission of the applicability of respondeat superior by Defendant QuikTrip.  *See Kelley v. Blue Line Carriers, LLC*, 300 Ga.App. 577, 580 (2009).

## VI.   Defendant's conduct warrants punitive damages

Punitive damages are recoverable where "it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to the consequences."  O.C.G.A. § 51-12-5.1(b).  Plaintiffs do not need to prove willful or intentional misconduct in order to justify punitive damages. Plaintiffs may prove wanton conduct by demonstrating Defendant's actions were reckless or done with a conscious indifference to the consequences.  *First Union National Bank of Georgia v. Cook*, 223 Ga. App. 374, 379 (1996).   Georgia Courts routinely hold that the question of imposition of punitive damages is for the jury.  *FPI Atlanta, L.P. v. Seaton*, 240 Ga. App. 880, 885-865 (1999).  Further, courts have held that punitive damages are recoverable in negligent security cases where the attack on plaintiff is foreseeable and the owner or occupier provides no or inadequate security.  *Doe v. Briargate Apartments, Inc.*, 227 Ga.App. 408 (1997) ("Because a jury could conclude that defendant was not providing any security for its residents on the date plaintiff was

raped, even though it had actual knowledge of the prior attack on plaintiff, it also could conclude that defendant was demonstrating an 'entire want of care which would raise the presumption of conscious indifference to consequences."); *see also Bethany Group, LLC v. Grobman*, 315 Ga.App. 298 (2012) (stating "it is usually willful or wanton not to exercise ordinary care to prevent injuring a person who is actually known to be, or may reasonably be expected to be, within the range of a dangerous act being done or a hidden peril on one's premises").

Here, whether punitive damages are recoverable is a jury question, and there are certainly facts that would warrant imposition of punitive damages in this case. For instance, Defendant QuikTrip knew of several prior shootings in its parking lot and, despite a recommendation from its head of security, failed to conduct a security survey for the subject QuikTrip. (Exhs. K, Q, T; Exh. AA, Tennison Dep. 98:16-18). Such a survey would have revealed the prevalence of crime between 3:00 and 4:00 am and on Thursdays. (*See* Exh. E, Harrison Dep.). Because it was foreseeable that customers, including Mr. Spencer, would frequent QuikTrip at night between 3:00 and 4:00 a.m. and utilize the parking lot, and QuikTrip had knowledge that the premises was prime for criminal attack, a reasonable jury could conclude that QuikTrip acted with an entire want of care or willfully and wantonly in failing to implement and utilize increased security features, thus raising a

presumption of conscious indifference to the consequences.   Moreover, a jury could find that QuikTrip, in light of its knowledge of prior crime, acted with entire want of care in abdicating any responsibility for the parking lot areas on December 29, 2016, despite the high chance of crime.   Accordingly, Defendant QuikTrip's Motion for Summary Judgment should be denied as to punitive damages.

### VII.   There is a question of fact on litigation expenses and attorney's fees

The issue of attorney's fees is a jury question.   *See Covington Square Associates, LLC v. Ingles Markets, Inc.*, 287 Ga. 445 (2010).   O.C.G.A. § 13-6-11 allows recovery of attorneys' fees and litigation expenses when Defendant acts in bad faith, has been stubbornly litigious, or caused Plaintiffs unnecessary trouble and expense.   A jury may award litigation expenses for a Defendant's stubborn litigiousness or causing unnecessary trouble and expense when no bona fide controversy or dispute existed as to Defendant's liability.   *King Industrial Realty, Inc v. Rich*, 224 Ga. App. 629, 635, 481 S.E. 2d 861 (1997); *Wilen v. Murray*, 292 Ga. App. 30, 33, 663 S.E. 2d 403 (2008).   Whether a bona fide controversy existed is a question for the jury, and "[t]he appellate court cannot reverse such an award merely because the evidence would have supported a verdict for the defendant." *L.S. Land Co. v. Burns*, 275 Ga. 454, 456, 569 S.E. 2d 527 (2002).

Georgia law is clear that even if, as Defendant QuikTrip asserts, a liability

23

question exists, it is for the jury, rather than the court, to make a determination as to whether attorney's fees are warranted.  In the case at bar, it is Plaintiffs' contention that there is no bona fide controversy at issue.  Nonetheless, Defendant QuikTrip continues to litigate this case at Plaintiffs' expense.  The evidence is clear that Defendant QuikTrip knew substantial crime occurred on the property, but did nothing to deter future crimes from happening.  Moreover, Defendant QuikTrip had far superior knowledge of the risk of criminal activity on the subject premises, yet did nothing to increase security or deter crime for invitees like Mr. Spencer.  As such, there is no bona fide controversy in this case, and a jury could reasonably determine that Defendant QuikTrip has been stubbornly litigious or otherwise caused Plaintiffs' unnecessary trouble and expense.  As such, there is a question of fact for the jury as to the issue of attorney's fees and expenses.

## VIII.  There is a question of fact as to negligence *per se*

Pursuant to O.C.G.A. § 51-3-1, "A proprietor's duty to invitees is to exercise ordinary care in keeping the premises and approaches safe."  As discussed at length above, there is a question of fact as to whether Defendant QuikTrip kept the premises and approaches "safe" for invitees like Spencer. Therefore, there is a question of fact as to whether Defendant QuikTrip was negligent *per se*.

## IX.   Defendant did not address all of Plaintiffs' claims

Although Defendant QuikTrip's Motion for Summary Judgment should be denied in whole as outlined above, Plaintiffs note that Defendant's motion fails to address several claims in Plaintiffs' Complaint.  These claims include negligence in failing to warn invitees of latent dangers on the premises, failing to ensure internal security policies were be followed and implemented, failing to take action to remove individuals who were loitering in the parking lot, failing to inspect or monitor the parking lot, failing to provide adequate lighting in the parking lot, and nuisance.  (*See* Compl.).  Accordingly, those claims survive Defendant QuikTrip's Motion for Summary Judgement.

## CONCLUSION

Defendant's expert testimony belies its entire argument and demonstrates that crime was foreseeable at the subject QuikTrip between 3:00 and 4:00 a.m. on Thursday December 29, 2016.  For the above and foregoing reasons, Plaintiffs' respectfully ask that this Court deny Defendant's Motion for Summary Judgment.

This 9th day of May, 2018                    Respectfully submitted,

                                             /s/ Elizabeth A. Rose
                                             Peter A. Law
                                             Georgia Bar No. 439655
                                             E. Michael Moran
**LAW & MORAN**                              Georgia Bar No. 521602
563 Spring Street                            Elizabeth A. Rose
Atlanta, Georgia 30308                       Georgia Bar No. 940275
(404) 814-3700                               Attorneys for Plaintiffs

## <u>CERTIFICATE OF COMPLIANCE</u>

This is to certify that the foregoing ***Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment*** has been prepared with one of the following font and point selections approved by the Court in L.R. 5.1. Specifically, the above mentioned pleading was prepared using Times New Roman font of 14 point size.

Respectfully submitted,

**LAW & MORAN**

/s/ Elizabeth A. Rose
Elizabeth A. Rose
Georgia Bar No. 940275
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

YVETTE ADELLE SANDERS,                )
Individually and as surviving parent,   )
and YVETTE ADELLE SANDERS,     )
as Administratrix of The Estate of       )
ANDREW THOMAS SPENCER,        )
deceased,                                            )
                                                          )          CIVIL ACTION FILE
           Plaintiffs,                               )          NO.: 1:17-cv-02341-WSD
                                                          )
v.                                                        )
                                                          )
QUIKTRIP CORPORATION             )
                                                          )
           Defendant.                             )

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a true and correct copy of the

foregoing **Plaintiffs' Response in Opposition to Defendant's Motion for**

**Summary Judgment** with the Clerk of Court using the CM/ECF system which will

automatically send email notification of such filing to:

Michael J. Rust
Nicole C. Leet
Gray, Rust, St. Amand, Moffett & Brieske L.L.P.
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, Georgia 30326

**[date and signature on following page]**

This 9th day of May, 2018.

Respectfully submitted,

**LAW & MORAN**

/s/ Elizabeth A. Rose
Peter A. Law
Georgia Bar No. 439655
E. Michael Moran
Georgia Bar No. 521602
Elizabeth A. Rose
Georgia Bar No. 940275
Attorneys for Plaintiffs

563 Spring Street
Atlanta, Georgia 30308
(404) 814-3700